## HICKS et ux. v. HUGO et al.

### No. 8663.

Court of Civil Appeals of Texas. San Antonio. Nov. 4, 1931.

Rehearing Denied Dec. 2, 1931.

Davis & Wright and Henry Stieler, both of San Antonio, for appellants.

Wm. Aubrey, of San Antonio, for appellees.

SMITH, J.

1. On May 4, 1925, Wimer-Richardson & Co., an investment corporation, sold certain lots in San Antonio to Jeannette Copeland Hicks, wife of W. D. Hicks. As part consideration for the land, the Hickses executed and delivered to the corporation their promissory note for the principal sum of $8,500, due five years after date, with interest at 8 per cent., payable semiannually, as evidenced by twenty interest coupon notes, ten of which were for $297.50 each, and ten for $42.50 each. The notes contained the usual attorney's fee clause, and all of them were made payable at the office of said corporation in San Antonio. The makers reserved in said principal note the right to pay the whole, or any portion thereof in multiples of $500, on any interest-paying date. The vendor's lien was expressly reserved upon said land to secure said notes, and a deed of trust was executed and delivered for a like purpose. The deed and deed of trust were duly recorded.

2. On May 12, 1925, Wimer-Richardson & Co., the payee, transferred said principal note and the ten interest coupon notes for $297.50 each to Lucile Wilson Hugo, guardian of the estate of her minor son, Victor Hugo, to whom the title to the notes subsequently passed. The assignor retained ownership of the ten interest coupon notes for $42.50 each; the parties agreeing that the lien to secure those notes should be inferior to the lien of the assignee to secure the notes conveyed to her. The written transfer of the notes to Mrs. Hugo was recorded on June 3, 1925, in the appropriate records of Bexar county.

3. Coincident with the transfer of said notes to Mrs. Hugo, Wimer-Richardson & Co. executed a written guaranty in which it obligated itself to "protect said guarantee against any loss of any of the principal of said notes * * * and any interest thereon," and, further, that "guarantor will collect the principal and interest of said notes for the guarantee without charge," and would insure the property involved against certain described losses.

4. On October 22, 1929, Wimer-Richardson & Co. was placed in receivership, and on

March 12, 1930, was adjudged bankrupt. The trustee in bankruptcy was impleaded in this suit, but was afterwards dismissed therefrom.

5. It appears that W. D. Hicks paid the interest upon said obligation semiannually, as it accrued, including the installment due on November 4, 1929. He so paid it to Wimer-Richardson & Co. at its office, except that the last-mentioned installment was paid to the receiver of said corporation, at the instance of Hugo, the owner and holder of the notes. Hugo retained possession of the notes, but, as each interest coupon note was paid by Hicks to Wimer-Richardson & Co., it was procured by the latter from Hugo and delivered to Hicks. The latter testified that Wimer-Richardson & Co. had no authority from him to collect the principal note, which he retained in his own possession.

6. It further appears that on November 9, 1929, Hicks paid over to Wimer-Richardson & Co. the sum of $3,500 to be applied upon the principal note. Wimer-Richardson & .Co. accepted the payment for that purpose, gave Hicks its receipt therefor, and credited the same upon its account with Hugo, but, concealing from Hugo the fact of the collection, pocketed the proceeds thereof, and appropriated the same to its own uses. It is conceded, or at least it .is indisputably proven, that Hugo knew nothing of this partial payment. So is it likewise shown that Hicks had no actual knowledge of the fact of the transfer of the notes from Wimer-Richardson & Co. to Hugo, or of the fact that Hugo had possession or control of the notes. On the other hand, it is certain that said transfer was timely recorded in the appropriate records of Bexar county, so as to charge Hicks with all the notice implied by law from such registration.

When the facts above set out were actually disclosed to the Hickses, they brought this suit against Hugo, alleging said facts, tendering the unpaid amount claimed by them to be due upon the notes, and praying for the cancellation of the obligations and release of the lien upon the property involved. In a cross-action Hugo prayed' for judgment against .the Hickses for the full amount of the debt, less the admitted interest payments, with foreclosure of said lien. In a trial before the court without a jury, judgment was rendered in favor of Hugo as prayed for. The Hickses have appealed. The trial court filed no findings of fact or conclusions of law.

The appeal rests upon the contention that the payment of $3,500 made by appellants to Wimer-Richardson & Co. should be applied to the principal note, as intended by appellants and as accepted by Wimer-Richardson & Co. The contention may be further narrowed to the question of whether Wimer-Richardson & Co. was the active or "ostensible" agent of appellee in receiving and accepting said payment; of whether the payment to the corporation and its acceptance thereof for that purpose amounted in law to a payment to the true owner and holder.

The question presented is one of fact and we have reached the conclusion that the trial court did not err in resolving the issue against appellants in this case. A mass of evidence was introduced upon the issue, and we cannot say there was no material evidence to support the trial court's finding. There is no evidence of express authority from Hugo to Wimer-Richardson & Co. to collect the principal note. On the other hand, appellee testified that no such authority was given by him. It is conceded that Wimer-Richardson & Co. did not have possession of the principal note, which was retained at all times by appellee as the owner and holder thereof. The issue was therefore one to be determined by the trial judge from all the facts and circumstances in evidence.

It is true, as conceded by appellee, that Wimer-Richardson & Co. collected the interest coupon notes from appellants, credited appellee's account therewith, and then obtained those coupons from appellee and surrendered them to appellants, who contend that by this course of dealing appellee made Wimer-Richardson & Co. his agent for the collection of the principal note. But the authorities are against this contention. Cunningham v. McDonald, 98 Tex. 316, 83 S. W. 372, 373; Higley v. Dennis, 40 Tex. Civ. App. 133, 88 S. W. 400; case note, 23 L. R. A. (N. S.) 418. In the latter citation the applicable rule is stated as follows: "That one other than the holder of securities collected the interest thereon, without the possession thereof, for the holder, without protest on his part, is not sufficient to raise a presumption or implication of authority to collect the principal without the possession of such securities"—citing many authorities, including the Texas cases above cited. The case of Cunningham v. McDonald, supra, is identical with the case made here in the particular here under consideration, and there our Supreme Court, speaking through Judge Brown, said that, if it be "admitted that the corporation, .acting as the agent of Cunningham [the owner and holder], collected the interest from McDonald [the maker], that fact would not tend to prove that it had the authority to collect the principal of the note. How can it be inferred from the agency to collect the interest that the agency to collect the note existed? The one fact does not form the basis for the presumption of the other fact."

So is it contended by appellants that Wimer-Richardson & Co.'s agency to collect the principal note is necessarily inferred from that corporation's guaranty of the collection and payment of the whole obligation, both principal and interest. But the contrary is stated to be the law in the case last cited. It

is there said by Judge Brown, in this connection, that: "The terms of the guaranty relied upon as evidence of authority to collect the principal do not reserve to the Bunnell & Eno Investment Company any control over the note. It provides that after the lapse of a certain time the guarantor shall have the right to take up the note by paying the principal thereof, or, in case the holder of the note should refuse, then the guarantor should be relieved from the guaranty; but this does not in any way tend to prove that Bunnell & Eno Investment Company retained any interest in or control over the note itself. The indorsement shows that the title to the note passed to the indorsee without limitation."

The fact that appellants had no actual notice of the transfer of the notes to Hugo did not relieve them of the duty to ascertain the true ownership and possession of the principal note before making payments thereon, in the face of the due registration of the transfer, since by such registration they were charged with notice of such transfer. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54; Saunders v. Hartwell, 61 Tex. 679; Southern, etc., Ass'n v. Brackett, 91 Tex. 44, 40 S. W. 719; Thomas v. Bank, 60 Tex. Civ. App. 133, 127 S. W. 844.

The judgment appealed from effects a hardship upon appellants, as an adverse judgment would have effected an equal hardship upon appellees. In such case, appellants, trusting most, must suffer most. The law afforded appellee the privilege of recording the transfer of the notes to himself, whereby notice was given appellants of appellee's ownership, control, and possession of the notes. When appellants failed to observe this notice, and in the face thereof paid the amount involved to another than the true owner, they, rather than the true owner, must suffer the loss occasioned by the rascality of the recipient of the fund. See Boltz v. Graf, 43 S.W. (2d) 469, decided by this court on October 14, 1931.

The judgment is affirmed.