## GENERAL CONTRACT PURCHASE CORPORATION v. SUMNER.

### No. 3779.

Court of Civil Appeals of Texas. Amarillo.
March 30, 1932.

Rehearing Denied May 25, 1932.

Dallas C. Biggers, of Dallas, and Bean & Klett, of Lubbock, for appellant.

Wilson, Randal & Kilpatrick, of Lubbock, for appellee.

### RANDOLPH, J.

This suit was filed in the district court of Lubbock county by appellant against appellee to recover on a note for the sum of $1,095, interest, attorneys' fees, and costs, and for a foreclosure of a mortgage lien upon a certain automobile.

The Gough Motor Company sold to appellee two automobiles, a coupé and a sedan. A partial payment was made by appellee upon each car, and notes given for the balance for each deferred payment on the separate cars, payable to the order of the Gough Motor Company. The note sued on was secured by a mortgage on the sedan. The note given in part payment for the coupé was secured by a lien on the coupé. The note sued on was transferred to the appellant by the Gough Motor Company. These notes appellee claims were paid off and discharged by him, and the questions for our consideration are, Was Gough Motor Company the duly authorized agent of appellant in accepting said payments, or was the Gough Motor Company, by the conduct of the appellant, held out as its duly authorized agent in such manner as to lead the appellee to believe that said company had authority to receive such payments in appellant's behalf?

There is no question in our minds that the facts in evidence establish a limited agency in the Gough Motor Company to act as the agent of the appellant in collecting both the principal and interest on the notes given to the Gough Motor Company by appellee and transferred to the appellant by said motor company. However, this is not the real question for our decision. Payment was made upon the note sued on to the motor company by appellee in a check payable to that company, and the motor company sent its check to the appellant, which was duly received and cashed by the appellant, and which should have been credited on the note and suit brought for the balance. This left a balance due on the note which the appellant, through the Gough Motor Company, was insisting must be paid. When Gough informed appellee of the demand for payment by the appellant, he told the appellee that he could refinance the loan through an Amarillo corporation. Gough then prepared the necessary instruments, they were signed by the appellee, and forwarded to the Amarillo corporation. That corporation accepted the papers, made the loan, but, instead of sending the money to appellee, credited it to the Gough Motor Company on an account owing by it to that corporation. It therefore appears that the money realized from this "refinancing" was appropriated by the Amarillo corporation, and was never received by the appellant. That, by the course of business between appellant and the motor company, the motor company collected sums due and owing to the appellant, cashed a check received therefor, and then remitted to the appellant by its own check, which was received and cashed by the appellant, sufficiently establishes the authority of the agent to collect and receive all such sums due and ow-

ing to the appellant, and such authority becomes apparent by implication and ratification. Therefore the appellee is protected from having to pay again to the principal what he has already paid to the agent. But, does this authority extend to such a transaction as was finally consummated between appellee and Gough, the president of the motor company? We think not.

 At the time that Gough proposed to the appellee to refinance the amount of the balance of his note due and owing to the appellant, the appellee knew that the appellant was the owner and holder of the note in controversy, and his having paid part of the note to the motor company, which was received and appropriated by appellant, did not estop the appellant from denying the authority of the motor company to act as its agent in the refinancing of the note as above set out. As to the transaction in which the motor company collected a part of the note, the appellee could have relied on the reception of the remittance for his account to appellant, in making further payments to the motor company, even though he had become possessed of knowledge that the appellant was the owner of the note and the motor company only the agent, but, when the agent proceeds with him to enter into a transaction entirely without the scope of such apparent authority, appellee's knowledge becomes important as furnishing him with information by which he could determine how far he could rely upon the agent's apparent authority.

"No principle is better settled in law, nor is there any founded upon more obvious justice, than that if a person dealing with an agent knows that he is acting under a circumscribed and limited authority and that his act is outside of and transcends the authority conferred, the principal is not bound." 2 Tex. Jur. (§ 42) 430.

This is true where the appellee relies on the course of dealing between the principal and agent.

It has been held that mere authority to collect debts or to collect and distribute money does not imply authority to release the debtors after payment, nor to extend the time of payment, nor to receive payment in anything but money. 2 Tex. Jur. 462, § 67.

It has also been held that it cannot be inferred from the fact that an agent has authority to collect interest on a note secured by a deed of trust that he is empowered to collect the principal—that the one fact does not form a basis for the presumption of the other. Cunningham v. McDonald, 98 Tex. 316, 83 S. W. 372.

It is apparent that the refinancing of the amount of the note owing to the appellant with the Amarillo corporation did not come within the authority of the motor company as agent; hence we sustain the appellant's contentions as to the lack of authority in the motor company to make the appellant liable for the money misapplied by the Amarillo corporation. We also sustain all propositions relating to the admission of evidence to establish that transaction. The other propositions of error are not likely to arise on another trial.

We therefore reverse the judgment of the trial court and remand the case to that court for another trial.